IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACKLYN SWEISS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 15-cv-8150 |
| URAN RAMADANI and LUTFI LATIF, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendants' motion to dismiss the Complaint and for summary judgment. (R.14). Defendants Uran Ramadani and Lutfi Latif (collectively, "Defendants") moved to dismiss the Complaint of Plaintiff Jacklyn Sweiss ("Plaintiff") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and under Rule 12(b)(1) for lack of standing. Defendants further moved for summary judgment on all counts pursuant to Federal Rule of Procedure 56. (*Id.*) For the reasons set forth below, the Court grants Defendants' motion and dismisses the Complaint without prejudice as to Counts I, II, III and IV. The Court dismisses Count V with prejudice. If Plaintiff intends to pursue further relief in this Court, she must file an amended complaint correcting the jurisdictional and pleading deficiencies addressed below on or before March 11, 2016.

**BACKGROUND**

This case arises from a dispute over whether a real estate transaction constituted a loan transaction or a sales transaction. Plaintiff alleges that Defendants tricked her into believing that they were extending her a personal loan to pay off another mortgage loan. Instead, she alleges,

Defendants purchased the subject property from her, charged her rental payments, and then commenced eviction proceedings when she defaulted on those payments. She brings this action seeking transaction rescission, statutory and compensatory damages, and declaratory relief as to ownership of the subject property under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* (Count I), and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* (Count II). Plaintiff also brings state law claims for fraudulent concealment (Count III), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 (Count IV), and statutory replevin, 735 ILCS 5/19-101 (Count V).

## I. Factual Background

In considering Defendants' 12(b)(6) motion to dismiss, the Court accepts the facts alleged in the Complaint as true. *See Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). The Court may also consider documents attached to the pleadings without converting the motion to dismiss into a motion summary judgment, as long as the documents are referred to in the Complaint and central to Plaintiff's claims. *Id.* at 729; Fed.R.Civ.P. 10(c). The Court may also consider extrinsic documents that are entitled to judicial notice without converting the motion into one for summary judgment. *Hecker v. Deere & Co.,* 556 F.3d 575, 582-83 (7th Cir. 2009).

In 2008, Plaintiff purchased a house at 9809 South Merton Avenue in Oak Lawn, Illinois, for $355,000 (the "Property"). (R.1, Compl. ¶ 7). Plaintiff had a $113,000 loan secured on the Property (the "Outstanding Loan"). (*Id.* ¶ 8). On May 8, 2013, Defendants agreed to pay Plaintiff the money she needed to pay off the Outstanding Loan and, in exchange, Plaintiff agreed to pay Defendants $2000 per month until she paid off the loan with Defendants. (*Id.* ¶ 9). Plaintiff believed this May 8, 2013 payment was a loan from Defendants. (*Id.*)

To "ensure" her re-payment of the loan, Plaintiff placed the Property "in [Defendants'] names until the loan [was] paid off." (*Id.* ¶ 11). A HUD Settlement Statement, attached to the Complaint and dated May 8, 2013, shows that Defendants "took a $155,000 loan to purchase" the Property. (*Id.*; R.1-1, HUD Settlement Statement, Exhibit A). The HUD Settlement Statement lists the "Borrower" as "Uran Ramadani and Lutfi Latif" (Defendants), the "Lender" as "Cash Transaction," and the "Seller" as "Sweiss Investment Limited Corp." (R.1-1, HUD Settlement Statement at 1). It also reflects that Defendants signed as "Purchasers" under the heading "Seller's and/or Purchaser's Statement." (*Id.* at 3). The Settlement Statement further lists the "Contract sales price" as $155,000, and deducts the "amount due to seller" by, among other items, the "payoff of first mortgage loan 1332 Holdings LLC." (*Id.* at 1). This deduction amount matches the "Actual Payoff" figure on the last page of the HUD Settlement Statement, under the heading, "Loan Payoff Summary." (*Id.* at 4). The Loan Payoff Summary also reflects that the "Principal Loan Amount" matches the Outstanding Loan amount ($113,000). (*Id.*). Lastly, the HUD Settlement Statement contains entries for "Rent Prorations" and "Security Deposit," and reflects that the Seller (Sweiss Investment Limited Corp.) received the balance of sales proceeds in cash. (*Id.* at 1).

In order to "further secure the loan and ensure Plaintiff [paid] the agreed-upon $2,000 per month," Plaintiff signed a lease agreement with Defendants. (R.1, Compl. ¶ 12). A Residential Lease, attached to the Complaint and dated May 8, 2013, refers to Defendants as "Lessors" and Plaintiff as "Lessee," and indicates that "Lessor leases to Lessee the premises situated at 9809 S. Merton, in the City of Oak Lawn, County of Cook, State of Illinois" for a 36-month term "to commence on May 8, 2013 and to end May 8, 2016." (R.1-2, Residential Lease, Exhibit B at 1). The Residential Lease also grants the Lessee the "option to purchase" the Property at fixed prices

(ranging from $180,000 to $200,000) during the lease term, and contains provisions relating to the payment of a Security Deposit, rent payment default, and applicable cure periods. (*Id.* at 1-4).

Plaintiff asserts that on May 8, 2013—the same day the HUD Settlement Statement and the Residential Lease were entered into—"Defendants in fact paid off Plaintiff's $113,000.00 loan on Plaintiff's $355,000.00 house, not by [giving] Plaintiff a loan, which the Plaintiff was lead to believe, but in fact [by] purchasing Plaintiff's house in exchange for paying off the $113,000.00 loan." (R.1, Compl. ¶ 13). On December 12, 2014, Defendants commenced an eviction action in the Cook County Circuit Court, seeking to evict Plaintiff and her family from the Property. *Uran v. Sweiss et al.*, Case No. 2014-M1-728588. (*Id.* ¶ 14).

## II.  Jurisdictional Background

In addition to their 12(b)(6) challenge, Defendants challenge Plaintiff's standing to sue under Federal Rule of Civil Procedure 12(b)(1). (R.14). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the required elements of standing[,]" including (i) injury in fact; (ii) causation; and (iii) redressability. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citation omitted). On a factual challenge to subject matter jurisdiction, district courts "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (citation and quotation omitted).

Here, Defendants present evidence that an Illinois corporation—not Plaintiff—owned the Property on the date of its 2013 sale to Defendants. (R.1-1, HUD Settlement Statement at 1 (identifying Sweiss Investment Limited Corp. as Seller); R.17-14, Declaration of Nawal Daoud

at ¶ 6 ("Title to the Property was in the name of a corporation entitled "Sweiss Investment Limited Corporation")). Because Defendants challenge standing as a factual matter, Plaintiff "must come forward with 'competent proof'—that is a showing by a preponderance of the evidence—that standing exists." *Lee*, 330 F.3d at 468. Plaintiff here does not dispute that "Sweiss Investment Limited Corp . . . entered into the subject transaction with Defendants." (R.19, Br. Opposing Motion to Dismiss at 2). She contends, however, that the HUD Settlement Statement and the Residential Lease "were both signed by Plaintiff her individual name[.]" (*Id.* at 3). Plaintiff also attaches an Illinois Secretary of State Corporate Filing and asks the Court to take judicial notice that: (i) Sweiss Investment was her alter ego with respect to the Property from 2013-2014; (ii) Sweiss Investment dissolved in 2014; and (iii) that "when the company dissolved all assets and liability transferred back" to her. (*Id.* at 2-3; R.19-1 Corporate Filing reflecting the 2014 dissolution of Sweiss Investment and identifying "Jacklyn Sweiss" as its "Agent").

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under federal pleading standards, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)). In reviewing a complaint, the Court must accept all "factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). "[L]egal

5

conclusions and conclusory allegations merely reciting the elements of the claim," however, "are not entitled to this presumption" of truth. *Id.*

Beyond the requirements of Rule 12(b)(6), Rule 9(b) requires all allegations of fraud or mistake to be "stated with particularity." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citing Fed.R.Civ.P. 9(b)).

Additionally, in ruling on a Rule 12(b)(1) motion to dismiss for lack of standing, "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Lee*, 330 F.3d at 468. As stated above, however, the complaint must establish the required elements of standing and—against a factual challenge—plaintiff must present competent evidence that standing exists. *Id.*

## ANALYSIS

**I. Standing**

The Court first addresses the issue of standing. Under Rule 12(b)(1), a court must dismiss a claim if it lacks subject-matter jurisdiction over it. *See State of Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998) ("Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further"). Because "standing is not dispensed in gross[,]" *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), a plaintiff who raises multiple claims "must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Defendants challenge Plaintiff's standing insofar as her alleged injury "is that she lost title to the Property." (R.14, Br. In Support of Motion to Dismiss at 14; *see also* R.1, Compl. ¶¶ 30, 38, 45 (alleging that Plaintiff "was damaged, in that she lost ownership of her home")). The jurisdictional record is clear that Sweiss Investment had title to the Property in 2013, and Sweiss

Investment subsequently transferred that title to Defendants when it sold the Property. (R.1-1, HUD Settlement Statement). Plaintiff, therefore, has no standing to sue to recover the Property title. The real party in interest is the corporation. *See Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 160 (7th Cir. 1996) ("Illinois follows the widespread rule that an action for harm to the corporation must be brought in the corporate name"). Contrary to Plaintiff's suggestion, Sweiss Investment's 2014 dissolution does not give her automatic license to sue for a corporate injury. *See* 805 ILCS 5/12.80 (Illinois corporate survival statute); *Sharif v. Int'l Dev. Grp. Co.*, 399 F.3d 857, 860 (7th Cir. 2005) (explaining the same). "Injury to the corporation does not, however, prevent suit by an investor who suffers a distinct personal injury[.]" *Frank*, 83 F.3 at 160. Plaintiff may be able to re-characterize her claims and allegations to sustain a direct lawsuit against Defendants.[1] As written, however, the Complaint fails to establish Plaintiff's standing for each claim she pursues, particularly with respect to title-related claims. The Court grants Plaintiff leave to re-plead consistent with the remainder of this Opinion and Order.

## II.   Individual Counts

### A.   TILA Claim (Count I)

In Count I, Plaintiff claims that she entered into "what she was told to be a loan agreement" and that—in this purported loan agreement—Defendants failed to make material disclosures required under TILA, such as those related to the annual percentage rate, the finance charge, the amount financed, the total number of payments, and the payment schedule. (R.1, Compl. ¶¶ 16-21) (citing 12 CFR §§ 226.18 and 226.23(a)(3)). She seeks transaction rescission and statutory damages because of Defendants' TILA violations. (*Id.* ¶ 21).

---

[1] The Court notes, for example, that Plaintiff also alleges injury insofar as Defendants are evicting her from the Property. (R.1, Compl. ¶¶ 30, 38, 45 (alleging that Plaintiff "was damaged, in that she . . . is currently in the process of being evicted")).

A threshold issue is whether TILA governs the transaction at issue. TILA "was intended to ensure that consumers are given 'meaningful disclosure of credit terms' and to protect consumers from unfair credit practices." *Marr v. Bank of Am., N.A.*, 662 F.3d 963, 966 (7th Cir. 2011) (citing 15 U.S.C. § 1601(a)). "The disclosures a creditor must make at the time he extends credit to a consumer are governed by TILA and its implementing regulation, Regulation Z." *Clay v. Johnson*, 264 F.3d 744, 747-48 (7th Cir. 2001) (citing 15 U.S.C. § 1638; 12 C.F.R. § 226.18 (2001)).

TILA applies broadly to consumer credit transactions, exempting from its coverage "transactions involving extensions of credit primarily for business, commercial, or agricultural purposes . . . or to organizations." 15 U.S.C. § 1603(a). Defendants argue that TILA does not apply here because TILA "only applies to loans made to a consumer," and this case involves neither a "loan" nor a "consumer." (R.16, Br. In Support of Motion to Dismiss at 9-10 (citing 15 U.S.C. § 1602(i))). Defendants' interpretation is too narrow. Courts examine "the substance rather than the form of credit transactions" to determine TILA applicability. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 727 (7th Cir. 2004) (Fair Credit Reporting Act case) (quoting *Clark v. Rent–It–Corp.*, 685 F.2d 245, 248 (8th Cir. 1982) (TILA case)). Here, the transaction was unquestionably—in form—a sale of real property, combined with a lease agreement and an option to purchase. (*See* R.1-1 and 1-2, HUD Settlement Agreement and Residential Lease). In substance, however, the Complaint and its exhibits suggest that the transaction was a credit arrangement designed to pay off the Outstanding Loan so that Plaintiff could continue to live at the Property with her family.[2] Although a corporate entity sold the Property to Defendants, Plaintiff—a natural person and a consumer within the meaning of TILA—entered into the

---

[2] Defendants' summary judgment submission does not seem to contradict this. (R.17, Local Rule 56.1 Statement of Undisputed Material Facts at ¶¶ 15-17).

8

Residential Lease that allowed her to continue to live at the Property. Viewing the transaction as a whole, the Court finds that the transaction had a primarily consumer nature within the meaning of TILA. *See Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1002 (N.D. Ill. 2009) (noting that "courts look to the entire surrounding factual circumstances" to determine commercial versus consumer nature under TILA) (citation omitted).

This finding does not mean, however, that TILA governs this transaction. Only "creditors" are subject to TILA's disclosure, rescission, and civil liability provisions. *See* 15 U.S.C. §§ 1631, 1632, 1635, 1637, 1640. TILA defines a creditor as: "a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable[.]" 15 U.S.C. § 1602(g). Here, there is no allegation or indication that Defendants "regularly" extend "consumer credit." Regulation Z clarifies that "[a] person regularly extends consumer credit only if it extended credit . . . more than 25 times (or more than 5 times for transactions secured by a dwelling) in the preceding calendar year." 12 C.F.R. § 226.2(17)(v). Here, there is no evidence that Defendants fit into this statutory category, subjecting them to TILA disclosure requirements and potential TILA liability. *Contra Clay v. Johnson*, 22 F. Supp. 2d 832, 836 (N.D. Ill. 1998), *rev'd on other grounds*, 264 F.3d 744 (7th Cir. 2001) ("Davenport and Johnson are creditors as defined by TILA because they engaged in at least the minimum number of transactions of five per year as required by TILA"); *see also Redic v. Gary H. Watts Realty Co.*, 762 F.2d 1181, 1186 (4th Cir. 1985) (defendant who routinely purchased real property and re-leased it to the seller with an option to repurchase *not* a TILA "creditor" absent showing that his other credit transactions were, under North Carolina law, loan transactions with security interests, rather than sales transactions with options to repurchase).

Absent a showing that Defendants are "creditors" within the meaning of TILA, Plaintiff has failed to allege her TILA claim.[3] *See Flynn v. People's Mortg., Inc.*, No. 98 C 3760, 1998 WL 831907, at *2-3 (N.D. Ill. Nov. 20, 1998). The Court dismisses Count I without prejudice.[4]

**B.     RESPA Claim (Count II)**

In Count II, Plaintiff alleges that "Defendants, whether they were lenders or buyers, failed to comply with any of the RESPA requirements," including a failure to disclose "costs associated with settling a real estate transaction," an estimate of "all the charges a buyer is likely to face" at closing, and "plans [for] holding the mortgage[.]" (R.1, Comp. ¶¶ 23-24).

"RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans." *Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676, 680 (7th Cir. 2011). It only applies to "federally related mortgage loans." *See* 12 U.S.C. § 2602(1). "These loans fall into one of four categories. Lenders making loans in the first three categories are insured by, regulated by, or in some other way connected with a federal agency" while "lenders in the fourth category . . . are essentially private lenders making residential real estate loans in excess of $1 million per year." *Allison v. Liberty Sav.*, 695 F.2d 1086, 1090 (7th Cir. 1982).

Defendants argue—and Plaintiff does not dispute—that the Complaint "does not, and cannot, allege that the two individual defendants are federally insured lenders, regulated by, or in some other way connected with a federal agency. Moreover, there are no allegations . . . that the two individual defendants satisfy the private lender category[.]" (R.16, Br. In Support of Motion to Dismiss at 11). The Court agrees. As with her TILA claim, Plaintiff has failed to state a

---

[3] Defendants' summary judgment submission (R.17) does not offer sufficient evidence to permit the Court to make this determination.

[4] The Court defers ruling on Defendants' statute of limitations argument pending amendment, if any, of Plaintiff's TILA claim.

RESPA claim. In addition, Plaintiff has failed to allege any factual content suggesting a right to relief above the speculative level. *Iqbal*, 556 U.S. at 678. Indeed, she fails to identify a RESPA violation by section or subsection, and fails to allege any specific fact constituting the alleged violation. Given these jurisdictional and pleading deficiencies, the Court dismisses Count II without prejudice.[5]

### C. Fraudulent Concealment (Count III)

Plaintiff also brings a fraudulent concealment claim and requests punitive damages. (R.1, Compl. ¶¶ 26-31). Fraud claims are subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that a plaintiff describe the "who, what, when, where, and how of the fraud." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) (citation omitted).

As Defendants observe, "none of the allegations in the complaint related to the claimed fraudulent scheme are plead with any specificity." (R.16, Br. In Support of Motion to Dismiss at 12). The Court agrees. Plaintiff's theory appears to be that Defendants made false promises about the nature of the transaction, inducing her to execute the HUD Settlement Statement and the Residential Lease. She claims, for example, that she "relied on Defendants' false representation by signing the documents they produced for her to sign." (R.1, Compl. ¶ 29; *see also id.* ¶ 13 ("Plaintiff was lead to believe" it was a loan); *id.* ¶17 ("she was told [it was] a loan agreement"); R.19, Br. Opposing Motion to Dismiss at 3 ("The intentional false and fraudulent representation Defendants made to Plaintiff to get her to sign the [documents] is the claim in this action"); *id.* at 5 ("Defendants tricked or deceived Plaintiff into signing the [documents]")). Plaintiff never specifies, however, *when* and *where* Defendants made these allegedly fraudulent

---

[5] The Court defers ruling on Defendants' statute of limitations argument pending amendment, if any, of Plaintiff's RESPA claim.

pre-transaction representations, *what* exactly Defendants represented, *which* Defendant said what, and/or to *whom* any Defendant spoke. In short, the Complaint does not satisfy the pleading requirements of Rule 9(b). Because Plaintiff has failed to plead her fraud claim with any particularity, the Court dismisses Count III without prejudice.

### D. Illinois Consumer Fraud and Deceptive Business Practices Act (Count IV)

In Count IV, Plaintiff alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 (the "Consumer Fraud Act"). Section 10a provides a private cause of action for "[a]ny person who suffers actual damage as a result of a violation of this Act." 815 ILCS 505/10a(a). A private plaintiff must establish that: "(1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005). A Consumer Fraud Act claim "must be pled with the same specificity as that required under common law fraud." *Id.* (citing Illinois precedent).

As discussed above, Plaintiff does not adequately plead a claim under common law fraud (Count III). Plaintiff's Consumer Fraud Act claim recites the same factual averments without particularity. (*See* R.1, Compl. ¶¶ 34-35 ("Defendants represented . . . that they will give her a $113,000 loan . . . Defendants intentionally made [a] false representation")). The Court therefore dismisses Count IV without prejudice, for the reasons set forth as to Count III.[6]

---

[6] Defendants argue that the Consumer Fraud Act does not apply because Plaintiff "does not allege that she purchased or contracted for the purchase of any merchandise." (R.16, Br. In Support of Motion to Dismiss at 12) (citing 815 ILCS 505/1(e)). Given the sparse nature of the Complaint, the Court cannot—and need not—determine as a matter of law whether Plaintiff is a "consumer" within the meaning of the Consumer Fraud Act (and/or is otherwise under the Act's

### E. Replevin (Count V)

Finally, Plaintiff seeks an order voiding the purported loan agreement and declaring her the Property owner under the Illinois replevin statute. (R.1, Compl. ¶¶ 40-46). As Defendants point out, however, an action of replevin applies only to "goods or chattel." *See* 735 ILCS 5/19-101. Real property, such as the Property, is not subject to replevin. *See CNB Bank & Trust, N.A. v. Rosentreter*, 39 N.E.3d 337, 355 (Ill. App. Ct. 2015) (noting that real estate fixtures are not subject to replevin); *see also Fifield v. Farmers Nat. Bank*, 35 N.E. 802, 805 (Ill. 1893). Plaintiff offers no authority, either in pleading or in briefing, to support her replevin claim. Furthermore, "[a]n action for replevin is a strict statutory proceeding, and the statute must be followed precisely." *WG Techs., Inc. v. Thompson*, No. 1:13-CV-304, 2013 WL 1943310, at *2 (N.D. Ill. May 8, 2013) (citation omitted). Plaintiff has made no showing that she followed the statutory requirements, such as those related to venue, notice, complaint, and bond posting. *See* 735 ILCS 5/19-101, *et seq.* The Court dismisses Count V with prejudice.

---

protection). The Court directs Plaintiff to establish her standing to seek relief under the Consumer Fraud Act, should she intend to pursue this claim.

**CONCLUSION**

For the foregoing reasons, the Court grants Defendants' motion to dismiss. The Court dismisses the Complaint without prejudice as to Counts I, II, III and IV. The Court dismisses Count V with prejudice. If Plaintiff intends to pursue further claims in this Court, she must file an amended complaint consistent with this Memorandum Opinion and Order on or before March 11, 2016.

**Dated:** February 9, 2016                     ENTERED

_____
AMY J. ST. EVE
United States District Court Judge